UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNIFER L. SANDEFUR,                    )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )          CAUSE NO. 3:14-CV-01942-MGG
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
                                          )
            Defendant.                    )

**OPINION AND ORDER**

On October 9, 2014, William D. Sandefur, Jr. ("Mr. Sandefur") filed his complaint in this

Court seeking reversal of the Social Security Commissioner's final decision to deny his

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Alternatively, Mr. Sandefur sought remand for further consideration of his application.  Before

the Court could resolve Mr. Sandefur's instant Social Security appeal, he died on July 20, 2015.

Because his claim for DIB was not extinguished, this Court substituted Mr. Sandefur's wife,

Jennifer L. Sandefur ("Mrs. Sandefur") as the Plaintiff in this action in its order under Fed. R.

Civ. P. 25 dated May 16, 2016.  [Doc. No. 32].

Mrs. Sandefur's Social Security appeal was deemed ripe as of May 26, 2016, based on

Mr. Sandefur's opening brief filed on June 24, 2015; the Commissioner's response brief filed

September 30, 2015; and Mrs. Sandefur's reply brief deemed filed on May 26, 2016.  [Doc. No.

34.]  The Court now enters the following opinion and order affirming the Commissioner's final

decision with the parties' consent pursuant to 28 U.S.C. § 636(c) and as authorized under 42

U.S.C. § 405(g).

# I. PROCEDURE

On February 8, 2012, Mr. Sandefur filed his Title II DIB application with the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 423 alleging disability beginning December 3, 2011.  The SSA denied Mr. Sandefur's application initially on May 10, 2012, and again upon reconsideration on June 19, 2012.  On April 16, 2013, a hearing was held before an administrative law judge ("ALJ") where both Mr. and Mrs. Sandefur appeared and testified.  A vocational expert ("VE") also testified at the hearing via telephone.  On June 14, 2013, the ALJ issued his decision finding that Mr. Sandefur was not disabled at Step Five of the evaluation process and denied him DIB.  On August 5, 2014, the Appeals Counsel denied Mr. Sandefur's request for review, making the ALJ's decision the final decision of the Commissioner.  Through the instant action, Mrs. Sandefur now seeks judicial review of the Commissioner's final decision denying her deceased husband's DIB application as authorized under 42 U.S.C. § 405(g).

# II. RELEVANT BACKGROUND

Mr. Sandefur was born on January 10, 1972, making him thirty-nine years old at the alleged disability onset date of December 3, 2011.  Mr. Sandefur sought DIB based upon limitations resulting from poorly controlled diabetes, an injury to his right eye, bipolar disorder, an anxiety disorder, and symptoms of schizophrenia.  Mr. Sandefur had a high school education and had completed one year of college, as well as training to be a certified crane operator and certified heavy equipment operator.  Additionally, Mr. Sandefur had past relevant work experience as a tank inspector, logistics supervisor, truck driver, and steel plant operator.

## A. Mr. Sandefur's Hearing Testimony

At the hearing before the ALJ, Mr. Sandefur testified regarding his conditions alleging that his disability is attributable to a combination of mental and physical impairments that

worsened after he suffered an eye injury for which he was hospitalized in December 2011. While hospitalized, Mr. Sandefur was diagnosed with diabetes. Mr. Sandefur testified that the insulin treatment for his diabetes forced him to stop working as a truck driver; that his blood sugar levels remained high despite his medication regimen; that his high blood sugar levels made him feel lightheaded; and that he had numbness in his hands and feet that affected his ability to grasp objects. Mr. Sandefur also testified that the injury to his right eyes decreased his vision and caused depth perception issues that prevented him from driving at night. Despite these issues, Mr. Sandefur indicated that he could stand for 20 minutes, walk a couple of blocks, and sit for an hour before needing to change positions.

Mr. Sandefur also testified as to the effects of his mental impairments. For instance, Mr. Sandefur testified that he preferred to be alone; had difficulty dealing with coworkers and supervisors; slept only 4–5 hours per night; and had trouble falling asleep because of racing thoughts. Mr. Sandefur also indicated that he helped care for his infant son, cooked simple meals, and did some things around the house but needed reminders to care for his personal needs. Mr. Sandefur reported that his depression decreased his ability to comprehend and understand; that he experienced unpredictable panic attacks; that he suffered from hallucinations that medication helped; and that he stopped taking Xanax and drinking alcohol, both of which had previously been issues for him. Generally, Mr. Sandefur noted that his bad days typically outnumbered his good days.

**B.     Medical Evidence**

**1.     Physical**

Mr. Sandefur was hospitalized for an eye injury on December 3, 2011, that also led to his diabetes diagnosis. Mr. Sandefur then visited his treating physician, D.L. Fortson, M.D., who

prescribed insulin to address the diabetes through May 2012. During a December 2011 office visit, Dr. Fortson noted that Mr. Sandefur "cannot work with insulin [and] needs to apply for short term disability." Doc. No. 10 at 346. Dr. Fortson explicitly noted that Mr. Sandefur presented no specific complaints related to his diabetes.

In May 2012, Mr. Sandefur sought treatment for his diabetes from Dr. Navll Abdo, M.D. In treatment notes dating from May to December 2012, Dr. Abdo indicated that Mr. Sandefur denied numbness in his feet and reported improvement on his medications. In December 2012, however, Mr. Sandefur reported that he could not afford, and therefore was not taking, the diabetes medications causing his blood sugar levels to rise. Even with the increased severity of his diabetes symptoms, Mr. Sandefur still denied numbness, had intact sensation, and presented no real complaints related to his diabetes at his December 2012 appointment with Dr. Abdo.

As part of the DIB application process, Mr. Sandefur was also examined by State Agency consulting physician, Dr. Angela V. Miller, M.D. In her Medical Source Statement dated April 24, 2012, Dr. Miller reported that Mr. Sandefur had demonstrated intact grip strength, normal strength in his lower extremities, a full range of motion, and an intact gait.

### 2. Mental

Mr. Sandefur reported being diagnosed with bipolar disorder before his December 2011 hospitalization. Based on a referral while hospitalized, however, Mr. Sandefur visited treating psychiatrist, Dr. R. Bhawani Prasad, M.D. from December 2011 to April 2012. In December 2011, Dr. Prasad noted his impression that Mr. Sandefur's bipolar disorder was in remission without any acute psychiatric symptoms, but recommended that Mr. Sandefur reduce his use of Xanax and hydrocodone out of concern for addiction issues. From October 2011 until March 2012, Mr. Sandefur was also treating with psychiatrist, Dr. Farzana A. Khan, M.D. who

diagnosed bipolar disorder.

From June 2012 through February 2013, Mr. Sandefur was treated by Dr. Linda Munson, D.O. On April 18, 2013, Dr. Munson completed a Medical Assessment regarding Mr. Sandefur's ability to do mental work-related activities. In the Medical Assessment, she opined that Mr. Sandefur "was much improved on medications [and that he] worsened when couldn't get them financially." *Id.* at 467.

Before starting treatment with Dr. Munson, Mr. Sandefur underwent a medical status examination with consultative State Agency psychologist, Dr. Alan Wax, Ph.D. Dr. Wax assigned Mr. Sandefur a GAF[1] score of 52, reflecting moderate symptoms, and diagnosed Mr. Sandefur with schizoaffective disorder. In his medical source statement, Dr. Wax opined that Mr. Sandefur's cognitive functioning appeared to be average or low-average; that his depression prevented him from doing basic self-care; and that he needed assistance with medications and fund management. *Id.* at 300.

## C.    ALJ's Opinion

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSA's regulations.[2] At Step One, the ALJ found that Mr. Sandefur had not engaged in substantial gainful activity since December 3, 2011, the alleged onset date. At Step Two, the ALJ found that Mr. Sandefur had the following severe impairments:  status-post right orbital fracture[3], bipolar disorder, and a history of

---

[1] A Global Assessment of Functioning ("GAF") score is based on a 100-point scale rating an individual's overall psychological, social, and occupational functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text rev. 2000). A score between 51 and 60 suggests moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

[2] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

[3] Mr. Sandefur's December 2011 eye injury.

substance abuse.  The ALJ also found that Mr. Sandefur suffered from several non-severe impairments including diabetes mellitus[4], mild curvature of the spine, and obesity.  However, at Step Three, the ALJ found that Mr. Sandefur's severe impairments did not meet or medically equal a Listing.

Before proceeding to Step Four, the ALJ concluded that Mr. Sandefur retained the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels but with some nonexertional limitations.  The ALJ found Mr. Sandefer was "limited to simple, routine, and repetitive tasks; [and] could handle brief and superficial interaction with coworkers and supervisors."  *Id.* at 23.  The ALJ also found that Mr. Sandefur was further limited in that he "could not drive at night or perform any jobs that require good depth perception; [and] could have no interaction with the public and [could perform] no work requiring teamwork."  *Id.*  At Step Four, the ALJ found that the aforementioned limitations prevented Mr. Sandefur from performing any of his past relevant work.  At Step Five, the ALJ considered Mr. Sandefur's age, education, work experience, and RFC and determined that he was able to perform a significant number of jobs in the national economy at the medium exertional level, including jobs as an order picker, a laundry worker, and a hand packer.

Based on these findings, the ALJ determined in his June 14, 2013, written decision that Mr. Sandefur had not been under a disability from December 3, 2011.  Mr. Sandefur requested that the Appeals Council review the ALJ's decision, and on August 5, 2014, the Appeals Council

---

[4] Diabetes mellitus is a disease whose symptoms include excessive urination, weight loss, and significant excess of sugar in urine and is often referred to simply as diabetes.  Stedmans Medical Dictionary 243100.  For ease of reference, the Court will use the term "diabetes" throughout this opinion and order.

denied Mr. Sandefur's request for review, making the ALJ's decision the final decision of the Commissioner.  *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

## III.    ANALYSIS

### A.    Standard of Review

On judicial review under the Social Security Act, the Court must accept that the Commissioner's factual findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).  Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).  Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  The ALJ must build a logical bridge from the evidence to his conclusion and a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence.  *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). However, the ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). An ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

### B.    Issues for Review

Mrs. Sandefur now seeks reversal or remand of the ALJ's decision, alleging that the ALJ generally imposed a greater burden of proof for showing disability than set forth in the SSA's regulations. More specifically, Mrs. Sandefur argues that the ALJ improperly determined that Mr. Sandefur's diabetes and diabetic neuropathy were not severe impairments at Step Two of the disability analysis. Additionally, Mrs. Sandefur challenges the ALJ's RFC determination arguing that the ALJ (1) disregarded the correct legal standards for evaluating medical opinion evidence; (2) failed to properly evaluate the credibility of Mr. Sandefur; and (3) failed to consider the aggregate effect of all of Mr. Sandefur's impairments, including those the ALJ determined were not severe. And lastly, Mrs. Sandefur asserts that the ALJ's Step Five finding was not supported by substantial evidence. The Commissioner opposes all of Mrs. Sandefur's arguments.

### 1. The ALJ's Step Two Severity Determination

Mrs. Sandefur argues that the ALJ erred by finding that Mr. Sandefur's diabetes and diabetic neuropathy were not severe impairments at Step Two of the disability analysis. At Step Two, an ALJ considers whether a claimant has an impairment that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is severe if is medically determinable and causes significant limitation in the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); *cf.* 404.1520(a).

The severity assessment, however, is only a threshold inquiry to screen out groundless disability applications. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ [must] proceed to the remaining steps of the [disability] evaluation process." *Id.* at 926–27 (quoting 20 C.F.R. § 404.1523). The ALJ first decides whether the claimant's severe impairments meet or medically equal a Listing as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1. If no severe impairment meets or equals a Listing, the ALJ must then conduct an RFC analysis based on a consideration of all the evidence in the record to ascertain the aggregate effect of the claimant's "entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Here, the ALJ identified only Mr. Sandefur's status-post right orbital fracture, bipolar disorder, and a history of substance abuse as severe impairments at Step Two. Mrs. Sandefur's argument that the ALJ should have found Mr. Sandefur's diabetes and diabetic neuropathy to be severe impairments at Step Two, however, is unpersuasive. A Step Two finding that Mr. Sandefur's diabetes and diabetic neuropathy constituted severe impairments would only benefit Mrs. Sandefur if she could have established that Mr. Sandefur's diabetes and diabetic neuropathy

met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at Step Three. Mrs. Sandefur does not raise such a Step Three argument.

Without any Step Three argument, any error related to the diabetes and diabetic neuropathy at Step Two would be harmless if it did exist. Indeed, the ALJ was required to consider all the evidence in the record, including any limitations caused by Mr. Sandefur's non-severe diabetes and diabetic neuropathy, in determining Mr. Sandefur's RFC. *See id.*

Moreover, the ALJ supported his Step Two determination that Mr. Sandefur's diabetes and diabetic neuropathy did not constitute severe impairments with substantial evidence. For instance, the ALJ cited evidence showing that Mr. Sandefur had been diagnosed with diabetes in December 2011 and began seeing Dr. Fortson who prescribed insulin treatment for him. Additionally, the ALJ noted that Mr. Sandefur saw Dr. Fortson on a monthly basis from January 2012 to May 2012 to refill his medication, but that Dr. Fortson's treatment notes did not reflect any specific complaints from Mr. Sandefur about his diabetes. The ALJ also noted that in May 2012, Mr. Sandefur began seeing Dr. Abdo for his diabetes, but that he denied any numbness in his feet. In addition, the ALJ referenced Dr. Abdo's reports showing that Mr. Sandefur's blood sugar levels increased from June through December 2012, but that he nevertheless claimed his energy and blurry vision had improved while taking the insulin.

Based on this evidence showing that Mr. Sandefur's blood sugar levels had run high at times but that he had no real complaints related to his diabetes, the ALJ concluded that Mr. Sandefur's diabetes and diabetic neuropathy constituted non-severe impairments. With a thorough articulation of this evidence, the ALJ built a logical bridge from all the evidence in the record to his Step Two conclusions about the severity of Mr. Sandefur's diabetic and diabetic

neuropathy.  Therefore, the ALJ's Step Two determination is the supported by substantial evidence and his severity determination must be affirmed.

### 2.    The ALJ's RFC Determination

An individual's RFC demonstrates his ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairments and their symptoms, including pain.  20 C.F.R. § 404.1545; SSR 96-8p 1996.  In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record.  20 C.F.R. § 404.1545.  The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence.  SSR 96-7p. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning.  20 C.F.R. § 404.1512(c). Therefore, when the record does not support specific physical or mental limitations on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

### a.    Weight of Medical Opinion Evidence[5]

Mrs. Sandefur contends that the ALJ erred by disregarding the proper legal standards in his evaluation of the medical opinion evidence as part of his RFC determination.  More specifically, Mrs. Sandefur alleges that the ALJ reversed the regulatory hierarchy for weighing

---

[5] The Court rejects the Commissioner's argument that Mrs. Sandefur's argument regarding treating source opinions should be deemed waived.  While Mrs. Sandefur's argument may be inarticulately stated, but indeed it sufficiently raises her concerns about whether the appropriate legal standard was applied and whether the ALJ supported his conclusions with substantial evidence.

medical opinion evidence by giving the least weight to the opinions of Mr. Sandefur's treating physicians and more significant weight to the opinions of State Agency examining and non-examining physicians. In response, the Commissioner contends that Mrs. Sandefur has not carried her burden on this issue because the ALJ explained his evaluation of all record medical opinions regarding Mr. Sandefur's functional limitations. The Court agrees with the Commissioner and finds that the ALJ adequately articulated his reasons for assigning particular weight to each of the medical opinions in the record.

An ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2). Medical opinions must be based on objective evidence, not on subjective allegations. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Generally, an ALJ weighs the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2). However, a claimant is not entitled to benefits merely because a treating physician labels him disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

An ALJ may discount a treating physician's opinion if it is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). However, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the court will "allow that decision to

stand so long as the ALJ 'minimally articulated[d]' his reasons—a very deferential standard that [the court has], in fact, deemed lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (internal citations omitted). The ALJ's reasoning should be based on the relevant factors applied to all medical opinions. *See* 20 C.F.R. § 404.1527(d)(2)–(6).

In her argument that the ALJ applied the wrong legal standard to the medical opinion evidence, Mrs. Sandefur seems to be alleging that all of the medical opinions were improperly evaluated. As demonstrated below, the ALJ sufficiently articulated his reasons for the weight afforded to each medical opinion. Moreover, the reasons presented by the ALJ for discounting the treating source opinions are supported by substantial evidence in the record as required. *See Gudgel*, 345 F.3d at 470.

### i.        Medical Opinions Regarding Physical Limitations

In his decision, the ALJ found the opinion of Dr. Fortson, one of Mr. Sandefur's treating physicians, inconsistent with the record and accorded it little weight. In his treatment notes related to Mr. Sandefur's office visit in December 2011, Dr. Fortson wrote that Mr. Sandefur "cannot work with insulin [and] needs to apply for short term disability." Doc. No. 10 at 346. In discounting this opinion, the ALJ noted that Dr. Fortson saw Mrs. Sandefur regularly from December 2011 through May 2012 and prescribed insulin to treat his diabetes throughout that time. The ALJ also reported that Dr. Fortson made no note of specific complaints of diabetic symptoms from Mr. Sandefur. In addition, the ALJ referenced Mr. Sandefur's testimony that he could not work as a truck driver because of his insulin. Howver, the ALJ clarified explicitly that no evidence showed that the insulin did not preclude work in other jobs. The ALJ also cited to other medical evidence in the record, including assorted reports of symptoms presented to other treating and examining physicians.

With these references to Mr. Sandefur's testimony and his medical record, the ALJ created a logical bridge from medical evidence to his conclusion that Dr. Fortson's opinion that Mr. Sandefur could not work while on insulin may have reflected the diabetes diagnosis, the insulin treatment regimen, and the implied risk of diabetic neuropathy, but that it did not show with particularity how Mr. Sandefur's functioning was limited by the diabetes as was his burden. *See* 20 C.F.R. § 404.1512(c) (indicating that a claimant has the burden to show how his impairments affect his functioning.); *see also Dixon*, 270 F.3d at 1177 (stating that a diagnosis alone does not define the specific limitations that a claimant faces.) Particularly persuasive is the ALJ's references to the reports of multiple physicians that Mr. Sandefur reported no numbness and presented with intact sensation despite his claims of neuropathy. In addition, the ALJ showed the flaw in Mr. Sandefur's expectation that inability to work as a truck driver meant he could not work at all. Moreover, the ALJ did not rely solely on inconsistencies with any opinion of a non-examining State Agency physician in deciding to discount Dr. Fortson's opinion. Thus, the ALJ supported the weight given to Dr. Fortson's opinion with substantial evidence in keeping with the applicable legal standard.

The ALJ similarly gave Dr. Abdo's treating source opinion little weight after concluding that Dr. Abdo's opinion was inconsistent with the record. In support, the ALJ showed inconsistencies within Dr. Abdo's own records as well as inconsistencies with evidence from a consultative examiner. *See Ketelboeter,* 550 F.3d at 625.

In his May 2013 Medical Source Statement, Dr. Abdo had opined, by checking boxes on the form, that Mr. Sandefur could occasionally lift and/or carry ten pounds; could stand and/or walk for at least 2 hours in an 8-hour workday; had manipulative limitations in his extremities; but that his sitting was not affected. *See id.* at 459–60. Notably, Dr. Abdo's accompanying

narrative stated that these limitations were the result of poorly controlled diabetes and resulting neuropathy. *Id.* at 460. The ALJ recognized Dr. Abdo's opinion, but explained that parts of the doctor's own records were not consistent with his opinion about Mr. Sandefur's functional limitations noted in the Medical Source Statement.

The ALJ explicitly showed these inconsistencies by comparing Dr. Abdo's records, which showed intact sensation with no complaints of numbness in Mr. Sandefur's extremities, to Dr. Abdo's opinion that Mr. Sandefur had manipulative limitations caused by neuropathy. The ALJ then noted the records from Mr. Sandefur's consultative examination with Dr. Miller reporting that he had intact grip strength with fine/gross manipulation and full strength in his lower extremities with an intact sensory exam but conflicting with Dr. Abdo's opinion that Mr. Sandefur had manipulative limitations resulting from neuropathy. By articulating these inconsistencies, the ALJ sufficiently explained his rationale for discounting Dr. Abdo's opinion and supported the weight given to Dr. Abdo's opinion with substantial evidence, as required.

The ALJ also supported with substantial evidence his decision to give significant weight to the opinion of consultative examiner Dr. Miller. In her Medical Source Statement in May 2013, Dr. Miller opined that Mr. Sandefur

> is able to sit, stand, walk, lift, carry and handle objects, hear and speak. He does have decreased vision. He also has difficulties with understanding, memory, sustained concentration, persistence in social interaction due to his bipolar disorder and possible schizophrenia.

Doc. No. 10 at 295. The ALJ found her opinion to be consistent with the record citing her report that he (1) had presented to her with an intact gait with full strength and range of motion in his extremities; (2) could squat and perform tandem walk without difficulty; and (3) had sought little treatment for his right eye, which he himself described as nearly normal in December 2011. Through this recitation of facts included in Dr. Miller's records combined with the ALJ's

analyses of Dr. Fortson's and Dr. Abdo's records and opinions, the ALJ has supported with substantial evidence the greater weight given to Dr. Miller's opinion even though she was not one of Mr. Sandefur's treating physicians.

### ii.    Medical Opinions Regarding Mental Limitations

In his consideration of the opinion evidence regarding Mr. Sandefur's mental limitations, the ALJ gave significant weight to the opinions of the State Agency psychological consultants, including Dr. Wax; little weight to the treating source opinion of Dr. Khan; and some weight to the treating source opinion of Dr. Munson.  The ALJ's decision reflects an analysis comparable to that of the opinion evidence related to Mr. Sandefur's physical limitations.  The ALJ laid out evidence from the records of all the mental health physicians to show the varying levels of consistency the medical opinions had with the record.

For instance, the ALJ referenced Dr. Khan's treatment notes, stating that Mr. Sandefur's symptoms related to his bipolar disorder were under reasonable control even though he continued to have issues while on medication, and Dr. Khan's opinion in May 2012 that Mr. Sandefur could not work because of residual symptoms from his anxiety and depression.  The ALJ contrasted Dr. Khan's opinion with evidence from Dr. Munson's treatment notes and Dr. Wax's consultative examination notes.

The ALJ cited parts of Dr. Munson's records, including her notes that Mr. Sandefur needed to decrease his intake of Xanax; medication improved his mood and had been working; and he had been cooperative with intact memory.  The ALJ also cited Dr. Munson's April 2013 Mental Source Statement in which she opined that Mr. Sandefur had poor to no ability to deal with stress or behave in an emotionally stable manner; had fair ability to interact with coworkers

and supervisors, maintain concentration, and handle simple work; and would be absent from work three days a month.

In addition, the ALJ referenced Dr. Wax's report that during the mental status examination, Mr. Sandefur had been polite and friendly and had recalled all three objects immediately during the memory test. The ALJ further acknowledged Dr. Wax's assessment that Mr. Sandefur had a GAF score of 52 reflecting moderate symptoms or functional limitations. Moreover, the ALJ compared assorted facts from Mr. Sandefur's and Mrs. Sandefur's testimony at the ALJ's hearing to the opinion evidence.

Based on this articulation of evidence in the record, the ALJ explained his rationale for the weight given to each medical opinion about Mr. Sandefur's mental limitations. As a result, the ALJ fulfilled his obligation to support with substantial evidence his conclusions regarding the mental health opinions.

In conclusion, Mrs. Sandefur's argument that the ALJ failed to afford appropriate weight to the medical opinion evidence by applying the wrong legal standard or by failing to support his conclusions with substantial evidence is not persuasive. The ALJ's opinion demonstrates that he considered all the evidence in the record through his thorough articulation of a wide range of evidence in support of his weight determinations, including opinions favorable to Mr. Sandefur. As a result, the ALJ properly created a logical bridge between the evidence and his conclusions.

### b.    Credibility

In a second attack on the ALJ's RFC determination, Mrs. Sandefur alleges that the ALJ failed to evaluate properly the credibility of Mr. Sandefur's subjective complaints by basing his conclusion that Mr. Sandefur was not credible largely on "the perceived lack of medical evidence documenting the alleged severity." Doc. No. 18 at 7. Mrs. Sandefur also contends that

the ALJ relied only on evidence suggesting the functional capacity to work "while minimizing or ignoring contrary evidence or indications that [Mr. Sandefur's] periods of improvement were short-lived." *Id.* at 8. In other words, Mrs. Sandefur argues that the ALJ failed to take into account the totality of Mr. Sandefur's physical and mental conditions leading to an erroneous credibility determination requiring remand. The Commissioner disagrees arguing that the ALJ's credibility determination included no errors, but even if it did, they did not result in a patently wrong credibility determination. The Court agrees with the Commissioner.

In assessing a claimant's subjective symptoms, the ALJ must follow a two-step process. *See* SSR 96-7p[6]; SSR 96-4p; 20 C.F.R. § 404.1529. First, the ALJ must determine whether there are underlying medically determinable physical or mental impairments that could be reasonably expected to produce the claimant's pain or other symptoms. *Id.* Second, if the ALJ establishes that such an underlying impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to work. *Id.* Whenever a claimant's statement about the symptoms and limitations of his impairments are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id.*

While a claimant can establish the severity of his symptoms by his own testimony, an ALJ need not accept the claimant's subjective complaints to the extent they conflict with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

---

[6] On March 16, 2016, the SSA issued SSR 16-3p providing new guidance for ALJs on evaluating subjective symptoms in disability claims. SSR 16-3p superseded SSR 96-7p "eliminating the use of the term 'credibility' from [the agency's] sub-regulatory policy [and clarifying] that subjective symptom evaluation is not an examination of an individual's character." However, the Court will apply the standard for ALJ credibility determinations established in SSR 96-7p, which was applicable when the ALJ issued his decision related to Mr. Sandefur's DIB application.

Because an ALJ is in a special position to evaluate witnesses, the court reviews credibility determinations deferentially such that they will only be overturned if they are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012).

Here, the ALJ concluded that Mr. Sandefur's symptoms were consistent with his impairments but that his allegations concerning the intensity, persistence, and limiting effects of those alleged symptoms were not fully credible. The ALJ based this credibility determination on Mr. Sandefur's treatment records, the medical and psychiatric evaluations conducted during the SSA's disability review, and inconsistencies between Mr. Sandefur's testimony and his statements to medical professionals.

The ALJ noted that Mr. Sandefur testified that he was unable to work due to diabetes, bipolar disorder, panic disorder, and an injury to his right eye. The ALJ began his credibility determination by focusing on Mr. Sandefur's testimony regarding his December 2011 right eye injury. The ALJ referenced Mr. Sandefur's testimony that the eye injury caused decreased vision and depth perception such that he could no longer able to drive at night. In contrast, however, the ALJ also pointed to a December 2011 medical record from his treating physician, Dr. Fortson, who reported Mr. Sandefur's own statement that his right eye was nearly normal. The ALJ further noted that the record lacked any evidence of any additional treatment for his eye. Moreover, the ALJ referenced an April 2012 record of Mr. Sandefur's consultative examination with Dr. Miller that noted that Mr. Sandefur was unable to see the vision chart with his right eye when his vision was uncorrected, but that he had normal visual fields.

The ALJ also considered Mr. Sandefur's testimony that he had numbness in his hands and feet that affected his ability to grasp objects as discussed above. In his credibility analysis, the ALJ again contrasted Mr. Sandefur's description of his symptoms with the results of Dr.

Miller's consultative exam that showed he had intact grip strength with fine/gross manipulation and had full strength in his lower extremities with an intact sensory exam. Additionally, the ALJ noted the absence of any complaint regarding numbness or sensory issues in both Dr. Fortson's and Dr. Abdo's records.

This Court will not disturb a credibility finding unless it is patently wrong. *Shideler,* 688 F.3d at 310–11. Because the ALJ substantially articulated his reasoning for giving Mr. Sandefur's testimony less weight and relied on substantial evidence in the record, Mrs. Sandefur has not established that the ALJ's credibility determination was patently wrong. Therefore, remand is not warranted on this issue.

### 3.    Step Five Analysis

The Commissioner bears the burden at Step Five "of 'providing evidence' demonstrating that other work the claimant can perform 'exists in significant numbers in the national economy'" based on the claimant's residual functional capacity, age, education, and work experience. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1560(c)(2). To elicit reliable evidence from a VE regarding other work available, an ALJ must pose hypothetical questions to the VE that incorporate all of a claimant's limitations supported by the medical evidence in the record, including but not limited to limitations accounting for deficiencies of concentration, persistence, or pace and/or social deficits. *O'Connor-Spinner*, 627 F.3d at 619; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *see also Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014).

Here, Mrs. Sandefur only argues that the ALJ's Step Five analysis was faulty because the hypothetical considered by the VE allegedly failed to consider the extent and effect of Mr. Sandefur's physical impairments in combination with his mental impairments. Because the

ALJ's hypothetical to the VE matched the RFC identified by the ALJ, Mrs. Sandefur's Step Five argument simply challenges the RFC determination. As discussed above, the ALJ's RFC analysis was determined using the correct legal standards and was supported by substantial evidence. Therefore, the ALJ's Step Five analysis is also supported by substantial evidence and must be affirmed.

**IV.    CONCLUSION**

Because the ALJ (1) supported his Step Two finding that Mr. Sandefur's diabetes and diabetic neuropathy were nonsevere, (2) applied the correct legal standards in determining Mr. Sandefur's RFC, and (3) supported the RFC with substantial evidence, including the credibility determination that was not patently wrong, the ALJ's determination of Mr. Sandefur's RFC should be affirmed. As a result, the ALJ's Step Five analysis based on the RFC was also supported by substantial evidence. Therefore, the Court **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g) finding that Mr. Sandefur was not disabled. [Doc. No. 18]. The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED**.

Dated this 20th day of October 2016.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge